IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DANIEL M. STANLEY,                    )
                                      )
     Plaintiff,                       )
                                      )
vs.                                   )CIVIL ACTION NO. 04-00436-BH-B
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of                       )
Social Security,                      )
                                      )
     Defendant.                       )

### REPORT AND RECOMMENDATION

Plaintiff Daniel M. Stanley ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383c, respectively. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on August 2, 2005. Upon careful consideration of the administrative record, oral argument and the memoranda of the parties, it is recommended that the decision of the Commissioner be **REVERSED** and **REMANDED**.

I.   **Procedural History**

On June 11, 1997, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income, alleging that he has been disabled since

January 22, 1997 due to residuals of a total hip replacement, chronic back syndrome with collapsed discs in his lower back, leg weakness, seizures, migraine headaches, back pain and depression. (Tr. 21, 24, 220-246, 522-525). Plaintiff's initial applications were denied and he filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 161-168). ALJ Ricardo M. Ryan ("ALJ Ryan") conducted a hearing on August 19, 1998, which was attended by Plaintiff, his counsel, and David R. Peavy, a vocational expert. (Id. at 49-54). On December 28, 1999, ALJ Ryan entered a decision wherein he found that Plaintiff has severe residuals from total right hip replacement and is unable to perform his past relevant work, but is capable of performing a full range of light work such as assembler, hand packer and machine operator. (Id. at 144-156).

Plaintiff sought review before the Appeals Council, and in a decision dated April 23, 2002, the Appeals Council remanded the case with instructions for further proceedings.[1] (Id. at 201-204). The Appeals Council directed the ALJ to further evaluate Plaintiff's "mental impairment" in accordance with the

---

[1]While the case was pending Appeals Council review, Plaintiff protectively filed subsequent concurrent applications for disability insurance benefits and supplemental security income on January 18, 2000; said applications were denied at the initial level and were consolidated with his pending claims pursuant to the Appeals Council's Remand Order. (Tr. 21).

special technique described in 20 C.F.R. §§ 404.1520a and 416.920a, give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to record evidence in support of the assessed limitations, and to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. (Id. at 203).

Pursuant to the Remand Order, ALJ Ryan conducted a supplemental hearing on October 16, 2002, which was attended by Plaintiff, his counsel and Barry W. Murphy, a vocational expert. (Tr. 104-136, 210-216). ALJ Ryan issued a second unfavorable decision on January 23, 2003. (Id. at 18-33). ALJ Ryan determined that Plaintiff possesses the severe impairments of status post right total hip replacement with chronic instability, status post right greater trochanter fracture, and mild lumbar degenerative disc disease without radiculopathy. (Id. at 32). The ALJ found that Plaintiff's depression does not constitute a severe mental impairment because it is the direct result of Plaintiff's continuous, chronic drug abuse. (Id. at 24). The ALJ also concluded that Plaintiff's severe impairments do not meet or equal the listings, and that although Plaintiff is unable to return to his past relevant work, he maintains the residual functional capacity to perform a range of unskilled

sedentary work and can  perform jobs such as bench assembler, hand mounter and order clerk, which exist in significant numbers in the national economy. (<u>Id</u>. at 18-33). On May 12, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner. (<u>Id</u>. at 9-11). <u>See</u> 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. <u>Background Facts</u>

Plaintiff was born on June 29, 1969 and was 33 years old at the time of the second administrative hearing. (Tr. 58, 112). Plaintiff has an eighth grade education, and past relevant work as a building maintenance worker, laborer, chipper/grinder, stock clerk and painter. (<u>Id</u>. at 23, 60-69, 90). According to Plaintiff, he is unable to work because of problems with his hip, pain in his back and legs, seizures, migraine headaches and depression. (<u>Id</u>. at 21, 24, 113-117, 220-246, 522-525). Plaintiff testified that he had a right hip replacement in 1993, and that due to the wear and tear on his hip, it needs to be replaced again, but he cannot afford to have it done. (<u>Id</u>. at 123-124). Plaintiff further testified that his hip keeps popping out of the socket when he is standing, walking and

4

laying down, but when he is seated normally, it does not rotate, move or pop out. (Id. at 116-117). Plaintiff testified that his back and legs begin to hurt after ten or fifteen minutes of walking or standing. (Id. at 113). Plaintiff testified that does not take any medication for his pain; however, at one point he was prescribed Lortab for his pain. (Tr. 82-85). Plaintiff testified that now, he only takes aspirin and BC powder for his pain. (Id. at 117).

Plaintiff also testified that he suffers from depression, for which he has sought treatment at the Mobile Mental Health Center ("MMHC"). (Id. at 117). According to Plaintiff, he was physically and emotionally abused by his father, and was raped at age five or six by a family friend. (Id. at 118-122). Plaintiff indicated that he has a hard time thinking and remembering, and has difficulty sleeping. (Id.) Plaintiff further testified that he has used "dope" for approximately ten years, that he smokes "dope" on average about three times a month, and that he had used "dope" two weeks before the October 16, 2002 hearing. (Id. at 111-112). Plaintiff testified that the last time he was seen at MMHC was three months prior to the October hearing, and that at that time, they did "nothing" for him, even though he told them he was depressed. (Tr. 117). According to Plaintiff, one of the doctors at MMHC suggested

that his memory and cognitive problems might be due to his drug use, and suggested that he attend group meetings. (Id. at 118). Plaintiff testified that he does not attend the group meetings because he does not like to talk about the abuse that he has suffered with others. (Id. at 118-122).

Plaintiff testified that he lives with his girlfriend, and that he spends most of his time sitting around the house. (Id. at 122-123). According to Plaintiff, he cleans, helps with cooking, and is able to drive and care for himself. (Id. at 123). In a daily activities questionnaire dated May 23, 2000, Plaintiff indicated that he has no problems getting along with others, and that he visits with and talks on the phone to family and friends approximately three to four times weekly. (Id. at 319-323).

III. **Issues On Appeal**

A.   Whether the ALJ committed reversible error, by adopting his own medical opinion, without citation to any medical evidence, in finding that Plaintiff does not suffer from a severe mental impairment (i.e., depression) in violation of the April 23, 2002 Social Security Administration Appeals Council remand order;

B.   Whether the ALJ committed reversible error, by holding that Plaintiff's drug use was a material contributing factor to the determination that he is totally disabled (because the ALJ's conclusion that Plaintiff's depression does not constitute a severe medical impairment, as it is the direct result of his continuous chronic drug abuse, is a substitution of his own unqualified medical opinion for those of a medical expert – without any supporting medical evidence) in violation of Social Security Program

6

Operations Manual System ("POMS") DI 90010.010(b)(3) and Social Security Regulation 20 C.F.R. § 416.935, and because the ALJ never found Plaintiff disabled, thus triggering a DAA analysis?

C.    Whether the ALJ committed reversible error, by failing in his obligation to develop a full and fair record regarding the vocational opportunities available to Plaintiff in this case in violation of Social Security Ruling 00-4p, by failing to ask the vocational expert on the record whether the evidence he provided conflicts with the Dictionary of Occupational Titles ("DOT") and to obtain a reasonable explanation for any apparent conflict?

D.    Whether the ALJ committed reversible error in acting as both judge and physician by arbitrarily substituting his own medical opinion, without any supporting medical opinions or substantial evidence, for the opinion of a medical professional in violation of Marbury v. Sullivan[2] and 20 C.F.R. §§ 404.1545 and 416.945, when he found a medical improvement in Plaintiff's impairments, from his last decision, to allow him to perform a full range of sedentary work without the necessity for a sit-stand option?

## IV. <u>Analysis</u>

### A.    <u>Standard of Review</u>

In reviewing claims brought under the Act, this court's role is a limited one. The court's review is limited to determining: 1) whether the decision of the Secretary is supported by substantial evidence; and 2) whether the correct legal standards were applied. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir.

---

[2] 957 F.2d 837, 840-841 (11th Cir. 1992) (Johnson, J., concurring).

1990).[3]   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (stating that substantial evidence is defined as "more than a scintilla, but less than a preponderance[,]" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, courts must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.   Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits or supplemental security income must prove their disability.   20 C.F.R. § 404.1512; 20 C.F.R. § 416.912. Disability is defined as the "inability to do any substantial

---

[3]This court's review of the Commissioner's application of legal principles is plenary.   Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his or her disability. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. First, Plaintiff must prove that he has not engaged in substantial gainful activity. Id. Second, Plaintiff must prove that he has a severe impairment or combination of impairments. Id. Third, if Plaintiff proves that the impairment or combination of impairments meets or equals a listed impairment, then he is automatically found disabled regardless of age, education, or work experience. Id. If the Plaintiff cannot prevail at the third step, he must proceed to the fourth step where he must prove an inability to perform his past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: 1) objective medical facts and clinical findings; 2) diagnoses of examining physicians; 3) evidence of pain; 4) the claimant's

age, education and work history. <u>Jones</u>, 810 F.2d at 1005.  Once Plaintiff meets this burden, the burden shifts to the Commissioner to prove at this fifth step that Plaintiff is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given his residual functional capacity, age, education, and work history. <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996). <u>See</u> <u>generally</u> <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs that the Plaintiff can perform, the burden shifts back to the Plaintiff who must prove an inability to perform those jobs, in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999); <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989); <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

In the case <u>sub</u> <u>judice</u>, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability, and that he has the impairments of status post right total hip replacement with chronic instability, status post right greater trochanter fracture, and mild lumbar degenerative disc disease without radiculopathy, which are "severe" within the meaning of the Act. (Tr. 24, 32).  The ALJ

found that Plaintiff's alleged depression was not a severe impairment because "it is the direct result of the claimant's continuous, chronic drug abuse." (Id. at 24).  The ALJ further determined that the record contained no evidence establishing that he had a seizure disorder during the relevant time period. (Id. at 24-26).  Plaintiff argues that the ALJ erred at this early stage, because he misapplied the regulation dealing with alcoholism and drug addiction and thus, did not conduct a proper analysis in this case.

As a preliminary matter, the undersigned notes that the regulations define a non-severe impairment as "an impairment or combination of impairments" that do "not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); 404.1521(a).  Basic work activities are defined as

> the abilities and aptitudes necessary to do most jobs.
> Examples of these include-- (1) Physical functions
> such as walking, standing, sitting, lifting, pushing,
> pulling, reaching, carrying, or handling; (2)
> Capacities for seeing, hearing, and speaking; (3)
> Understanding, carrying out, and remembering simple
> instructions; (4) Use of judgment; (5) Responding
> appropriately to supervision, co-workers and usual
> work situations; and (6) Dealing with changes in a
> routine work setting.

See  20  C.F.R.  §  416.921(b);  20  C.F.R.  §  404.1521(b). Plaintiff's impairments may be considered "not severe" only if they are slight abnormalities which have such a minimal effect

11

on him that they are not expected to interfere with his ability to work, regardless of age, education or work experience. Brady v. Heckler, 724 F.2d 914, 922 (11th Cir. 1984). In McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986), the Eleventh Circuit clarified the severity determination and stated as follows:

> [a]t step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe. Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

Id. at 1031. Based upon a review of the record evidence, the undersigned finds that the ALJ erred in concluding that Plaintiff's depression does not constitute a severe mental impairment because it is the direct result of Plaintiff's continuous, chronic drug abuse. The medical evidence clearly demonstrates that Plaintiff's depression is not so slight as to be trivial.

Specifically, the record reflects that during late 1998, Plaintiff began treatment at the Mobile Mental Health Center ("MMHC") for depression. (Tr. 475-479). On November 17, 1998, Plaintiff complained of a depressed mood and thoughts of suicide about two to three times per month. (Id. at 479). Plaintiff

12

reported that "I couldn't do it[,] [p]ull the trigger that is."
(Id.)  Plaintiff was noted as having symptoms of hopelessness as
well as loss of energy and motivation.  (Id.)  Plaintiff also
reported that he was physically abused as a child, and that his
parents were alcoholics.  (Id.)  Plaintiff acknowledged the use
of "pot" and "crack cocaine" but denied using alcohol.  (Id.)
Plaintiff also reported that he was unable to get disability
benefits due to his hip replacement, so his attorney was going
to "try the psyc evaluation rout[e]."  (Tr. 479).  The MMHC
treating physician noted that Plaintiff's affect was
appropriate, his mood was anxious and irritable, he had suicidal
thoughts but no plans or means, his sleep was poor, his appetite
was fair/poor, his orientation was normal and his motor activity
was calm.  (Id.)  The doctor noted "possible malingering."
(Id.)

    Plaintiff returned to the MMHC on November 30, 1998.  (Id.
at 478).  Plaintiff reported a depressed mood and nightmares.
(Id.)  Plaintiff also reported that his sleep was bad; however,
he indicated that he was sleeping six hours a night.  (Id.)
Plaintiff reported a fair/poor appetite and denied any
hallucinations or suicidal/homicidal thoughts.  (Tr. 478).  The
physician noted that Plaintiff's affect was appropriate and that
his mood was irritable.  (Id.)  Plaintiff was not prescribed any

13

medication, but was encouraged to keep a log, comply with therapy and stay sober. (Id.)

Plaintiff was seen at MMHC again on December 15, 1998. (Id. at 477).  Plaintiff reported that he had not been sleeping for three to four days, and that he was easily aggravated.  (Id.) Plaintiff also reported marijuana abuse and experimentation with cocaine and crack.  (Id.) The physician observed that Plaintiff still has much anger related to his childhood, and that he was sad and tearful when discussing the neglect by his parents. (Tr. 477).  Plaintiff was diagnosed with major depression, probable posttraumatic stress disorder and polysubstance abuse, and was prescribed Paxil.  (Id.)

Plaintiff visited the MMHC on March 23, 1999. (Id. at 476). Plaintiff reported that the Paxil "helped a lot."  (Id.) Plaintiff stated that he had not used marijuana since New Year's, but when asked to submit to a drug test, admitted to continued daily marijuana use.  (Id.)  The physician's diagnosis was as follows: "[r]/o [rule out] major depression-doubt[,] probable PTSD 2d [secondary to] abandonment-mild[,] chronic marijuana use [and] 2d [secondary gain] - wants SSI."  (Id.) Plaintiff was asked to choose his form of therapy - marijuana abuse or abstinence with regular follow-up and mental health treatment - and was referred for outpatient substance abuse

14

treatment.  (Tr. 476).

Plaintiff sought treatment from Southwest Alabama Health Services for depression on November 1, 1999.  (Id. at 460). Plaintiff reported that he was depressed and was having problems eating and sleeping.  (Id.)  Plaintiff stated that his father died in June, and that his mother and grandmother had died in September as a result of a motor vehicle accident.  (Id.) Plaintiff was diagnosed with depression, and given Paxil and Doxycycline.  (Id.)  Plaintiff returned to Southwest on January 20, 2000, and reported that the Paxil helped quite a bit, but that the Doxycycline did not.  (Id. at 459).  Plaintiff was diagnosed with depression, and given Paxil. (Tr. 459).

At the request of the Social Security Administration ("SSA"), Annie Formwalt, Psy. D. ("Dr. Formwalt") conducted a psychological evaluation of Plaintiff on June 27, 2000.  (Id. at 423-425).  This evaluation reflects that:

- Plaintiff reported experiencing erratic sleep patterns, decreased appetite, feelings of sadness daily, vague auditory hallucinations, frequent thoughts of death but no current suicidal or homicidal ideation, decreased pleasure in activities he formerly enjoyed and feelings of loneliness and being socially withdrawn. Plaintiff reported that in 1999, he lost his mother, father and grandmother within 90 days of each other; he also indicated that his childhood was abusive and he was neglected.

- Plaintiff told Dr. Formwalt that his daily activities consist of watching TV, listening to

15

the radio, playing his guitar and trying to
sleep; however, he added that he is able to
drive, cook and clean (dust, mop and sweep).

- Dr. Formwalt's mental status exam of Plaintiff
found him to be alert and oriented, appropriately
dressed and groomed, his thought processes were
intact, he did not appear confused, his
conversation was normal, no phobias, obsessions
or compulsions were observed, and it appeared
that he was able to understand, remember and
carry out instructions. Dr. Formwalt noted that
Plaintiff's insight and understanding of himself
are limited, that his judgment is limited, and
that "[d]ue to substance abuse issues, he may
benefit from assistance with managing his funds."

- Plaintiff admitted to smoking two to three
marijuana joints per week, that he has been using
for about ten to fifteen years, that he also
drinks three to four beers twice a week, that he
used crack cocaine in 1996 but has not used it
since 1997, and that he had completed thirty days
of a ninety day treatment program.

- Plaintiff reported applying for disability
"because of my hip and back problems[]" and that
he had not worked "because of my leg and my
back."

(Id.) Dr. Formwalt diagnosed Plaintiff with major depressive

disorder and polysubstance abuse, and noted that "[i]t is likely

that within the next six to twelve months he will receive some

benefit from treatment." (Id. at 425).

At the request of the SSA, Kim M. Zweifler, Ph.D. ("Dr.

Zweifler"), conducted a consultative psychological evaluation of

Plaintiff on July 18, 2002. (Id. at 465-468). Dr. Zweifler's

report reflects that:

- Plaintiff reported that he has been depressed for 10 years and is "anti-social," stating that he has difficulty forming close relationships, is withdrawn and feels anxious. Plaintiff added that he has trouble concentrating, problems with early and mid-insomnia and poor self-esteem. Plaintiff reported further, that he has lost interest in most activities, has occasional crying spells, has feelings of hopelessness and helplessness, is aggravated at times, displays angry verbal outbursts, and has passive suicidal ideations at times but has not attempted to harm himself.

- Plaintiff reported that his daily activities include eating, watching TV, listening to the radio, playing with his nephews, visiting with family and friends and sometimes picking up toys around the house, washing dishes and bathing.

- Plaintiff reported that he began smoking marijuana as a teenager and continues to smoke marijuana two to three times per week, that he last smoked marijuana the previous weekend, that he used cocaine for several months in 1997 and that he drinks alcohol "socially."

- Dr. Zweifler observed that Plaintiff was appropriately dressed, adequately groomed, displayed no obvious difficulties with fine or gross motor skills and exhibited no unusual behaviors. Dr. Zweifler further observed that Plaintiff had a good ability to perform simple calculations, his abstract reasoning skills were good, his general fund of knowledge was adequate, his immediate and remote memory appeared adequate, he spoke at a normal pace, he did not appear confused, he had appropriate mood and affect and did not appear anxious. Dr. Zweifler also opined that Plaintiff has little insight into himself and his condition, and that he might benefit from assistance managing funds.

- According to Dr. Zweifler, on the WAIS-III, Plaintiff scored in the low average range of intelligence and displayed weakness in work

17

knowledge, expressive vocabulary and short term auditory memory and attention.

- Dr. Zweifler diagnosed Plaintiff with depression NOS and cannabis abuse. Dr. Zweifler concluded that Plaintiff's ability to understand and complete simple verbal instructions seemed adequate; however, his ability to respond to others seemed restricted.

(Id.)

Additionally, Dr. Zweifler completed a medical source opinion form (mental) on Plaintiff, on this same day, in which she indicated that Plaintiff experienced <u>no</u> limitations in the following areas:

- using judgment in simple one and two-step work-related decisions;

- understanding, remembering and carrying out simple one and two-step verbal instructions;

- maintaining attention, concentration or pace for periods of at least two hours; and

- maintaining activities of daily living.

(Tr. 469-470). Dr. Zweifler found that Plaintiff had "<u>moderate</u>" limitations in: 1) responding appropriately to supervisors, co-workers, customers or the general public (due to depression); 2) using judgment in detailed or complex work-related decisions and dealing with changes in a routine work setting (due to cannabis abuse); 3) understanding, remembering and carrying out detailed or complex verbal instructions (due to low average IQ and cannabis abuse); and 4) maintaining social functioning (due to

18

depression NOS).   (Id.)   Dr. Zweifler concluded that if
Plaintiff stopped using drugs and/or alcohol, there would be an
improvement in these limitations, such that he would have better
social skills, judgment, concentration and productivity.   (Id.
at 470).

At the request of Plaintiff's counsel, psychologist Michael
S. Rosenbaum, Ph.D. ("Dr. Rosenbaum") conducted a consultative
psychological examination (including a semi-structured interview
for making the Major Axis 1 diagnoses from the DSM-IV) of
Plaintiff on October 14, 2002, which reflects that:

- Plaintiff exhibited a cooperative attitude, sad facial expression, blunted affect, depressed mood, appropriate eye contact, normal quality and quantity of speech, coherent thought processes, appropriate judgment and limited insight. Plaintiff did not exhibit characteristics of hallucinations, delusions, suicidal ideation or homicidal ideation.

- Plaintiff testified that his daily activities include having coffee, watching TV, visiting with his cousin, eating, listening to the radio and taking his girlfriend to work; he has no household tasks to complete because he does not have a permanent home and his girlfriend does his laundry.

- Plaintiff admitted to drinking one or two beers per week and to smoking marijuana on a regular basis – from two to three times per week to two to three times per day.  Plaintiff was arrested once for possession of marijuana.

- Plaintiff reported having had difficulties with episodes of depression since he was eight or nine years old.  Plaintiff reported physical and

emotional abuse by his father until age ten, and
sexual abuse by a family friend at age five or
six.  Plaintiff's depression manifested in sleep
disturbance, difficulty concentrating, loss of
interest in usual activities, fatigability,
negative thoughts about himself, thoughts of
suicide, frequent crying episodes and psychomotor
agitation or psychomotor retardation.

- Plaintiff was diagnosed with major depressive
disorder (recurrent), cannabis dependence and an
undifferentiated somatoform disorder.  Dr.
Rosenbaum opined that Plaintiff likely
experienced a disturbing traumatic event in the
past which continues to distress him today, and
produces recurrent episodes of anxiety.

- Dr. Rosenbaum concluded that it was questionable
whether Plaintiff could sustain performance in a
work-related setting for a reasonable period of
time due to his physical impairments when
combined with his depression, fatigue, confusion,
distractibility, difficulty concentrating and his
excessive concern about physical functioning and
interpersonal difficulties.  Dr. Rosenbaum also
opined that Plaintiff's drug abuse was a
contributing material factor to his mental
functional restrictions and limitations, and that
it was "important" for Plaintiff to get involved
in an outpatient program for the treatment of
substance use disorders so he can achieve and
maintain abstinence from drug use.  Dr. Rosenbaum
recommended that Plaintiff resume mental health
treatment for his depression and begin an
outpatient program for substance abuse treatment.

(Id. at 511-517).  Additionally, Dr. Rosenbaum completed a

mental residual functional capacity questionnaire for Plaintiff

in which he noted that Plaintiff has "mild" restrictions in his

daily activities and in his ability to understand, carry out and

remember instructions, respond appropriately to supervision and

perform simple and/or repetitive tasks.  (<u>Id</u>. at 518-520).  Dr. Rosenbaum also found that Plaintiff has "<u>moderate</u>" restrictions in his ability to maintain social functioning and respond appropriately to co-workers as well as "<u>moderate</u>" deficiencies of concentration, persistence or pace.  (<u>Id</u>.)  Dr. Rosenbaum found further, that Plaintiff has "<u>marked</u>" limitations in responding appropriately to customary work pressures.  (Tr. 520).

The record also contains a July 21, 2000[4] mental residual functional capacity assessment form completed at the request of the SSA, by William H. Simpson, Ph.D. ("Dr. Simpson").  (<u>Id</u>. at 429-432).  Based on his review of the medical records, Dr. Simpson concluded that Plaintiff is "<u>moderately</u>" limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention, concentrate for extended periods of time and set realistic goals or make plans independently of others.  (<u>Id</u>. at 429-430).  On this same day, Dr. Simpson also completed a psychiatric review technique form in which he noted that Plaintiff has a history of treatment for mood disorder NOS, cannabis dependence, cocaine abuse, major

---

[4]Dr. Simpson's assessment, which was based on a review of the medical records, does not contain information from Dr. Zweifler or Dr. Rosenbaum's evaluation of Plaintiff, because those evaulations took place after Dr. Simpson's assessment was generated.

depressive disorder and polysubstance abuse, but that his activities of daily living do not appear to be severely restricted. (Id. at 433-441). Dr. Simpson concluded that Plaintiff's functional limitations include a "slight" degree of limitation for restrictions of activities of daily living and difficulties in maintaining social functioning; and an "often" degree of limitation relating to deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere). (Id. at 440).

In light of the foregoing, it is clear that the ALJ erred in concluding that Plaintiff's depression does not constitute a severe impairment. The substantial medical evidence regarding Plaintiff's depression conclusively establishes that it results in limitations in a number of areas, including Plaintiff's ability to concentrate and relate to coworkers and supervisors. Interestingly, in concluding that Plaintiff's depression is not severe, the ALJ did not find that his depression is so slight and its effect so minimal that it would not be expected to interfere with his ability to work. Instead, the ALJ found that Plaintiff's depression does not constitute a severe medical impairment because it is the direct result of Plaintiff's continuous, chronic drug abuse. The ALJ erred by focusing on the purported cause of Plaintiff's depression, namely his

chronic drug abuse, to totally dismiss the effects of his depression at step two of the five-step sequential evaluation process.

The Contract with America Advancement Act of 1996 ("CAAA"), 42 U.S.C. § 432(d)(2)(C), amended the SSA to preclude an award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled.  See, e.g., Doughty v. Apfel, 245 F.3d 1274, 1275 (11th Cir. 2001); Mand v. Apfel, 2001 WL 267457, *4 (M.D. Fla. 2001); Tucker v. Apfel, 2000 WL 548178, *1 (S.D. Ala. Apr. 12, 2000); Englert v. Apfel, 1999 WL 1289472, *8-13 (M.D. Fla. Jun. 16, 1999).  Specifically, the CAAA provides that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  Doughty, 245 F.3d at 1279.  The regulations implementing the CAAA, namely 20 C.F.R. § 404.1535 and 20 C.F.R. § 416.935, provide that once the Commissioner determines that a claimant is disabled and finds medical evidence of drug addiction or alcoholism, there must then be a determination of whether the drug addiction or alcoholism is a contributing factor material to the determination of disability.  Id.  "The key factor" in

23

this "materiality determination," is "whether the claimant would still be found disabled if he stopped using drugs or alcohol." Id. (citing to 20 C.F.R. § 404.1535(b)(1)).

The problem in this case is that the ALJ did not properly consider the effects of Plaintiff's depression at step two, and moreover, he proceeded to the materiality determination without first determining whether Plaintiff was disabled. The regulations require, however, that the sequential evaluation process be followed in adjudicating disability before any consideration is given to whether drug addiction is the cause of disability. 20 C.F.R. §§ 404.1535(a); 20 C.F.R. § 416.935. To find that drug addiction is a contributing factor material to the determination of disability, without first finding that Plaintiff is disabled, as the ALJ did here, is to put the cart before the horse. Indeed, the implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C). "The Commissioner must first make a determination that the claimant is disabled [and] then[,] make a determination whether the claimant would still be found disabled if he . . . stopped abusing [drugs]. . . ." See Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001). "The ALJ cannot begin to apply § 423(d)(2)(C) properly when, as here, he has not yet made a finding of disability." Id. at 1215.

In <u>Brueggemann v. Barnhart</u>, 348 F.3d 689, 693-695 (8th Cir. 2003), the Eighth Circuit explained that the regulations require the ALJ to first determine whether the claimant is disabled. The ALJ must reach this determination using the standard five-step approach detailed in 20 C.F.R. § 404.1520, "without segregating out any effects that might be due to substance use disorders." <u>Id</u>. at 694.  In other words, the ALJ must base this initial disability determination on substantial evidence of medical limitations "without deductions for the assumed effects of use disorders." <u>Id</u>.  "The inquiry here concerns strictly symptoms, not causes[]" such that "if the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of substance use disorders are absent." <u>Id</u>. at 694-695.

As noted <u>infra</u>, the ALJ conducted a faulty five-step sequential evaluation because he did not properly consider the limitations caused by Plaintiff's depression, or the cumulative effect of such limitations in conjunction with Plaintiff's other severe impairments, such as his right hip impairment.  This error was further compounded because the ALJ did not follow the prescribed method for evaluating substance abuse, but instead, addressed the materiality of Plaintiff's substance abuse at step

two of the sequential evaluation process rather than after making a disability finding.

The undersigned has endeavored to ascertain the extent to which the above-described errors can be deemed harmless, as it would seem that Plaintiff cannot rely on his depression while his chronic drug use, is, according to some of the doctors, contributing to his depression. However, while there is medical evidence suggesting that Plaintiff's depression would improve if he discontinued his drug use, the ALJ's decision does not address whether any of the limitations, including those associated with his depression, would likely continue and/or whether such limitations coupled with his other severe impairments would render Plaintiff disabled in the absence of his drug use. Accordingly, the undersigned concludes that the decision of the ALJ should be reversed and the cause remanded for further administrative proceedings to properly assess the limitations associated with Plaintiff's depression. If, upon completion of the five-step sequential evaluation process, the ALJ determines that Plaintiff is disabled, he should then proceed to engage in the substance abuse analysis set forth in regulations. In so doing, the ALJ shall make specific findings, based on the medical evidence, regarding the extent to which Plaintiff's limitations, including those associated with his

26

depression, would remain in the absence of drug use.

## V.   <u>Conclusion</u>

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security denying Plaintiff's claim for disability income benefits and supplemental security income, be **REVERSED** and **REMANDED.**[5]

The attached sheet contains important information regarding objections to this <u>report and recommendation</u>.

DONE this **11th** day of **August 2005**.


　　　　　　　　　　　　<u>　　/s/SONJA F. BIVINS　　</u>
　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

---

[5]Given the nature of this ruling and for the reasons set forth herein, this Court finds that there is no need to address and/or rule upon the remaining three (3) issues on appeal.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   See 28 U.S.C. § 636(b)(1)(c); and Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within ten (10)

days of being served with a copy of the statement of objection. <u>See</u> Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **<u>Transcript (applicable where proceedings tape recorded)</u>**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        **/s/ SONJA F. BIVINS**
        **UNITED STATES MAGISTRATE JUDGE**